UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------------------X
KEITH GANT,

                        *Plaintiff,*

                  -against-

UNITED STATES OF AMERICA, FORMER WARDEN HERMAN E. QUAY, DR. BRUCE BIALOR, M.D., MEDICAL PERSONNEL "JOHN/JANE DOE 1-4" and CORRECTION OFFICERS "JOHN/JANE DOE 1-4", individually and in their official capacity as officers or staff, (the name "John/Jane Doe" being fictitious, as the true names are presently unknown),

                        *Defendants.*
-------------------------------------------------------------------------------------------X

## COMPLAINT

JURY TRIAL
DEMANDED

*Civil Action No.*_____

## PRELIMINARY STATEMENT

1. This is an action in which the plaintiff seeks relief pursuant to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971) and its progeny, under the Fifth and Eighth Amendments to the United States Constitution, for the willful failure and withholding of proper safety and medical care and treatment, and access to proper medical care and treatment, which caused him to suffer cruel and unusual treatment while he remained a prisoner and in the custody of the United States Bureau of Prisons ("BOP"). Plaintiff further brings this suit under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, et seq., for negligence of individual defendants who were federal employees, in connection with the safety, security, care and treatment they provided to him within the scope of their employment with the United States Bureau of Prisons. Plaintiff also seeks compensatory damages, both affirmative and equitable relief, an award of costs and such other relief as this Court deems equitable and just. As a direct result of Defendants' wrongful acts and omissions, Plaintiff has suffered permanent and severe injuries, including a fracture with permanent hardware installation and nerve damage, for which he now seeks relief.

1

## VENUE, JURISDICTION AND CONDITIONS PRECEDENT

2. Venue is proper for the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1391 (a), (b) and (c) and 28 USC § 1402 (b). The Eastern District of New York is the proper venue because it is the judicial district wherein a substantial part of the events and omissions giving rise to this action occurred.

3. This Court has subject matter jurisdiction over the subject matter of this Complaint under the United States Constitution and pursuant to 28 U.S.C. § § 1331, 1343 as raising a federal question under the Constitution of the United States of America and being an action seeking redress for the violation of Plaintiff's constitutional and civil rights and pursuant to 28 U.S.C. § 1346 (b) as seeking relief against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §2671, et seq. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over all other claims as they are related and form part of the same case or controversy and pursuant to 39 U.S.C. §409.

4. Jurisdiction is also invoked herein pursuant to 28 U.S.C. § 2401(b), 39 C.F.R. 912(a); the Fourth, Fifth and Eighth Amendments to the United States Constitution and 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

5. On or about October 31, 2022, Plaintiff timely submitted his administrative claim of injury to the United States Federal Bureau of Prisons-Northeast Regional Office (hereinafter, "United States Federal Bureau of Prisons"), detailing the events complained of. More than six months have elapsed since the filing of the Administrative Claim and adjustment or payment thereof has been denied, neglected or refused.

6. It has been over six months since Plaintiff timely served his Administrative Claim and the BOP has failed to make a final disposition as to the claim. The Plaintiff thereby deems his Administrative Claim denied pursuant to 28 U.S.C. § 2675 (a).

## PARTIES

7. Plaintiff is 57 years old and at all times hereinafter mentioned was, and still is, a citizen of

the United States, at all times relevant herein was an incarcerated individual under the care of the Federal Bureau of Prisons.

8. The United States Federal Bureau of Prisons was, and still is, at all times relevant herein, an independent agency of the Defendant **UNITED STATES OF AMERICA** and existing under and by virtue of the laws of the United States.

9. Defendant **UNITED STATES OF AMERICA** is the appropriate defendant for Plaintiff's claims under the Federal Tort Claims Act.

10. The United States Federal Bureau of Prisons was, and still is, at all times herein, an independent agency created and authorized under the laws of the United States. Defendant **UNITED STATES OF AMERICA** is authorized to maintain a United States Federal Bureau of Prisons, which acts as its agent in the area of correctional facilities services and for which it is ultimately responsible. Defendant **UNITED STATES OF AMERICA** assumes the risks incidental to the maintenance of correctional facilities and the employment of United States Correctional Officers as said risks attaches to the individuals under care and custody of the United States Federal Bureau of Prisons. Defendant **UNITED STATES OF AMERICA** operates United States Federal Prisons Bureau, a department or agency of Defendant **UNITED STATES OF AMERICA** and responsible for the appointment, training, supervision, promotion and discipline of Correctional Officers and supervisory Correctional Officers.

11. That at all times herein relevant, Defendant **UNITED STATES OF AMERICA** committed a tortious act within the State of New York.

12. That at all times herein relevant, Defendant **UNITED STATES OF AMERICA**, committed a tortious act without the State of New York causing injury to person or property within the State of New York.

13. That at all times herein relevant, Defendant **UNITED STATES OF AMERICA**, owns, uses or possesses any real property situated with the State of New York.

14. That by virtue of the allegations above, Defendant **UNITED STATES OF AMERICA**, is subject to the laws of the State of New York pursuant to CPLR 302.

15. At all times herein, all Defendants, its agents, servants and/or employees were acting under color of federal law.

16. At all times herein mentioned, Defendant **HERMAN E. QUAY**, former Warden of MDC, was at all times relevant to this Complaint acting within the scope and course of his employment with the BOP. As Warden of MDC, Defendant Quay was responsible for and oversees all day-to-day activity at MDC. He was responsible for all aspects of the operation and function of MDC. His responsibilities included ensuring the safety of all in the institution and ensuring the orderly running of the institution.

17. At all times herein mentioned, defendants **QUAY** and **DOES** (collectively at times referred to as "Administrative Defendants") were personnel employed by the BOP and/or MDC, and worked within the MDC in different capacities including, but not limited to, Wardens, Correctional Officers, administrative staff, and healthcare professionals. At all times herein mentioned, these defendants were responsible, in whole or in part, for the day-to-day operation and conditions of MDC, and for the health and safety of inmates confined within.

18. With respect to the Bivens claims herein, **QUAY** and **CO DOES** are sued in their individual capacities.

19. At all times herein mentioned, **DR. BRUCE BIALOR, M.D., ("BIALOR")** was a licensed physician holding the title of MDC Brooklyn's Acting Clinical Director and was either employed and/or contracted with the BOP and/or MDC, and was responsible for the day-to-day oversight of medical examination, testing, treatment and general health of incarcerated individuals confined at MDC.

20. At all times herein mentioned, **MEDICAL PERSONNEL "JOHN/JANE DOE 1-4" and CORRECTION OFFICERS "JOHN/JANE DOE 1-4"** were, and still are, at all times relevant herein, duly appointed and acting officers, agents, servants, and employees of

Defendant **UNITED STATES OF AMERICA,** specifically of the FEDERAL BUREAU OF PRISON.

21. At all times herein mentioned, **MEDICAL PERSONNEL "JOHN/JANE DOE 1-4" ("MEDICAL DOES") and CORRECTION OFFICERS "JOHN/JANE DOE 1-4" ("CO DOES")** were, and still are, at all times relevant herein, acting under color of law in the course and scope of their duties and functions as officers, agents, servants, and employees of Defendant **UNITED STATES OF AMERICA,** were acting for, and on behalf of, and with the power and authority vested in them by Defendant **UNITED STATES OF AMERICA** were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

22. At all times herein mentioned, **BIALOR** and **MEDICAL DOES** undertook to and did provide medical, diagnostic and technical examinations, evaluations, consultations, care, treatments, prescriptions, medication, procedures, services, or advise of, for and to Plaintiff.

23. With respect to Plaintiff's potential <u>Bivens</u> claims herein, Defendants are sued in their individual capacities.

24. Defendants **DOES** are the fictitious names of persons still to be learned at MDC, who were in charge of the custody, supervision and care provided to Plaintiff.[1]

## STATEMENT OF FACTS

25. Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

26. At all times herein relevant, defendant **UNITED STATES OF AMERICA**, has been the owner of a certain premises known as Metropolitan Detention Center (MDC), located at 80 29th Street, City of Brooklyn, County of Kings and State of New York.

---

1 Despite Plaintiff's due diligence, he has been unable to ascertain the names of the medical personnel from that time period as that information is in the sole custody, control and possession of Defendants, is maintained, retained and held by Defendants and Plaintiff reserves the right to substitute the CO DOES and the MEDICAL DOES for named individuals when that information is disclosed to Plaintiff. Regarding the MEDICAL DOES, it is possible that Gina Duncan, FNP-BC and/or Beverly Timothy, ANP-C and/ or Nicole Trauffer, Ph,D are possible individuals that were

27. That at all times hereinafter mentioned, Defendant **UNITED STATES OF AMERICA**, by its agents, servants and/or employees managed, maintained, controlled, operated, supervised the aforesaid premises responsible to keep MDC in a safe and suitable condition for incarcerated individuals including Plaintiff.

28. That on or about November 11, 2020, Plaintiff **KEITH GANT** was an incarcerated at the Metropolitan Detention Center (MDC) located in Brooklyn, New York in Unit 51.

29. That, while Plaintiff was incarcerated at the MDC, he was prescribed and administered medication for depression; specifically sertraline and doxepin.

30. That while Plaintiff was incarcerated at MDC, Plaintiff was upon information and belief, not medically cleared to be on a top bunk and upon information and belief Defendants were aware that Plaintiff was not permitted to be assigned a top bunk.

31. That Plaintiff was assigned a top bunk and Defendants knew or should have known that Plaintiff was not permitted to be assigned a top bunk.

32. That in the 24-72 hours prior to November 11, 2020, Plaintiff was prescribed the incorrect medication unbeknownst to Plaintiff and/or the medication prescribed was not the same medication that was administered.

33. That on or about November 10, 2020, when Plaintiff **KEITH GANT** was administered his medication by Defendants, he took the two pills at the time directed.

34. That, upon information and belief, shortly thereafter as a result of consuming the incorrect medication, Plaintiff **KEITH GANT** lost consciousness when he was on his bed on the top bunk.

35. That, when Plaintiff **KEITH GANT** lost consciousness he was caused to fall to the floor, fracturing his left arm and his right orbital bone.

36. That, upon information and belief, Plaintiff **KEITH GANT** at some point thereafter was taken to an outside hospital for x-rays on his face; but he was not given x-rays for his arm at

---

responsible for this Plaintiff however without more information in discovery, it is impossible to determine at this

that time.

37. That, thereafter, Plaintiff **KEITH GANT** was transferred back to the MDC where he was put on suicide-watch forced to be in restrictive confinement for several months, and complained regularly about the excruciating pain in his left arm.

38. Upon information and belief, Plaintiff verbally complained and complained via writing sick call requests to seek medical attention for his pain from the day he returned through March of 2021.

39. Upon information and belief, MDC learned of this arm fracture or potential arm fracture from the date of the incident and neglected to provide necessary and reasonable care.

40. Upon information and belief, some basic testing was done in January of 2021 confirming the arm fracture and still nothing was done to provide necessary and reasonable care.

41. That, it wasn't until approximately four (4) months later that plaintiff was allowed medical attention for his left arm, at which time he was transported to Brooklyn Hospital where they discovered and treated his arm fracture.

42. That, Plaintiff **KEITH GANT** underwent surgeries for his injuries at Brooklyn Hospital on or around April 23, 2021 for a left ulna ORIF where he has metal hardware in his arm as a result of the injury sustained back in November of 2020.

43. This surgery is so severe and invasive that it results in metal hardware being permanently placed in the patient's arm and Mr. Gant was forced to suffer in pain from November 11, 2020 through April 23, 2021 before he was properly cared for.

44. That, since the incident, Plaintiff has received minimal physical therapy for his left arm and hand, in which he continued to experience numbness, pain, and limited range of motion.

45. Mr. Gant wrote further sick calls expressing his persistent, serious and severe complaints of pain and despite Plaintiff's pleas for help and medical attention, Plaintiff's pain was not addressed until months after when finally he was seen on or about June 21, 2021 when his cast

time.

was removed.

46. Mr. Gant continued to complain of pain, numbness and swelling to **MEDICAL** and **CO DOES** and **BIALOR** until he was taken in for an additional surgery in the later part of 2021.

47. That, based on the foregoing, the treatment provided (and failed or refused to be provided) to Plaintiff by Defendants fell well below the recognized standards of professional practice and constituted deliberate indifference to the serious medical needs of Plaintiff.

48. Defendants had sufficient information to allow them to understand Plaintiff's medical needs and necessary prescriptions, and nevertheless failed to properly procure and/or administer the proper treatments and/or medications. Further, Defendants failed to have him timely evaluated by a physician, failed to have him immediately admitted to a hospital, and completely failed to offer any care for his fractured arm for approximately four (4) months and thereafter for his much needed post-care continuing until his release in 2023.

49. After Plaintiff **KEITH GANT** sustained the aforementioned injuries, Defendant, its agents, servants and/or employees denied Plaintiff his needed medical attention.

50. After Plaintiff **KEITH GANT** sustained the aforementioned injuries, Defendant, its agents, servants and/or employees deliberately delayed Plaintiff reasonable and/or adequate medical attention.

51. After Plaintiff **KEITH GANT** sustained the aforementioned injuries, Defendant **UNITED STATES OF AMERICA**, its agents, servants and/or employees and specifically, **FORMER WARDEN HERMAN E. QUAY, MEDICAL PERSONNEL "JOHN/JANE DOE 1-4" and CORRECTION OFFICERS "JOHN/JANE DOE 1-4"** ignored or otherwise rejected Plaintiff's requests and pleas for medical attention.

52. Upon information and belief, there was no radiology or other testing ordered to evaluate his pain.

53. Upon information and belief, a nerve damage test was not conducted until September of 2021 nearly a year after Plaintiff's injury.

54. Therefore, the acts or omissions on the part of Defendant **UNITED STATES OF AMERICA**, its agents, servants and/or employees and specifically, **FORMER WARDEN HERMAN E. QUAY, MEDICAL PERSONNEL "JOHN/JANE DOE 1-4" and CORRECTION OFFICERS "JOHN/JANE DOE 1-4"** caused injuries to Plaintiff which would not have otherwise occurred. As a result of these injuries, Plaintiff has experienced severe emotional distress, anxiety, depression, and physical pain and anguish. He has had further need to receive ongoing treatment as a result of the failure to provide him with timely medical treatment. Therefore, Plaintiff sustained both serious physical and mental injuries as a result of the improper care and treatment provided by Defendants to Plaintiff.

55. Some of the defendants observed the violation of Plaintiff's rights under the Constitution of the United States and New York State Law and did nothing to prevent the injuries to Plaintiff.

56. As a result of the deliberate indifference to plaintiff's safety and the failure to protect plaintiff and delaying and/or denying necessary medical care, the individually named defendants caused plaintiff to sustain physical, psychological, and emotional trauma.

## FIRST CLAIM FOR RELIEF
## FEDERAL TORT CLAIMS ACT
**Negligence, Medical Negligence and Negligent Hiring, Training, Retention & Supervision.**

57. The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

58. That the aforementioned incident occurred solely as a result of the negligence, medical negligence, and negligent hiring, training and supervision of Defendant **UNITED STATES OF AMERICA**, its agents, servants and/or employees and its agents, servants and/or employees' negligence without any negligence attributable in any measure to Plaintiff **KEITH GANT**.

59. At all the times herein mentioned, defendant **UNITED STATES OF AMERICA**, individually or through its agents, servants, and/or employees, operated maintained, managed, and controlled MDC while Plaintiff was housed and in Defendant's custody.

9

60. As set forth more fully above, including in the Statement of Facts, Defendants owed Plaintiff duties to provide proper medical care, and failed to comply with those duties.

61. As set forth more fully above, including in the Statement of Facts, Defendants owed Plaintiff duties to provide care, security, supervision and safety, and failed to comply with those duties.

62. At all the times herein mentioned, it was the duty of the defendant **UNITED STATES OF AMERICA**, BOP, its agents, servants and/or employees including defendants **WARDEN**, **BIALOR**, **MEDICAL DOES** and **CO DOES** to operate, maintain, and manage the said premises, protecting the health and safety of the inmates within.

63. At all the times herein mentioned, it was the duty of the defendant **UNITED STATES OF AMERICA**, BOP, its agents, servants and/or employees including defendants **WARDEN**, **BIALOR**, **MEDICAL DOES** and **CO DOES** to ensure that inmates with requisite medical need are scheduled for, and taken to, appointments with external medical providers for proper care and treatment.

64. The defendants, their agents, servants, and/or employees breached their duty to Plaintiff by failing to schedule or comply with the scheduled appointments at the external medical facilities, and by improperly allowing and permitting Plaintiff's condition and pain to remain untreated, despite his recurrent complaints, Sick Calls, and visits to the medical clinic.

65. As a direct, legal and proximate result of the foregoing, including the aforesaid negligent acts and omissions and medical negligence of the defendants, Plaintiff suffered injuries and damages including but not limited to two serious fractures, two invasive surgeries, permanent hardware, the need for extensive medical treatment including physical therapy and nerve testing, excruciating pain and suffering, mental distress, fear, anxiety, and discomfort, frustration and loss of quality of life, loss of enjoyment and pleasures of life, loss of income, as well as attendant losses, including, but not limited to, past and future medical expenses.

66. Mr. Gant's injuries were inflicted through no fault of his own but were solely and wholly by reason of Defendants' failure to properly prescribe medication, failure to properly administer

medication, failure to properly monitor the medication prescribed and administered to incarcerated individuals such as Plaintiff, and failure to monitor, observe, watch, oversee and supervise their employees, agents, officers and medical personnel to properly prescribe and administer medication to incarcerated individuals such as Plaintiff.

67. Mr. Gant's injuries were inflicted through no fault of his own but were solely and wholly by reason of Defendants' failure to provide, or take steps to provide, proper care and treatment including timely referral to and treatment by specialists such as a surgeon, therapist and radiologist, the need for which they had prior knowledge of through information provided to Defendants by Mr. Gant and external medical providers.

68. Mr. Gant's injuries were inflicted through no fault of his own but were solely and wholly by reason of Defendants' deliberate indifference to Plaintiff's medical needs.

69. Defendants' conduct was grossly negligent in that defendants were so careless as to show complete disregard for the rights and safety of Mr. Gant.

70. Defendants engaged in willful misconduct in that defendants acted in such a reckless manner as to completely disregard the consequences of their actions.

71. By reason of the foregoing, the above described actions of the Defendants constitute the tort of negligence under the laws of the State of New York.

72. Under the Federal Tort Claims Act, defendant **UNITED STATES OF AMERICA** is liable for the individual Defendants' acts and omissions within the scope of their employment.

73. That the Defendant, its agents, servants and/or employees breached their duty of reasonable care that they owed to the Plaintiff in this circumstance.

74. Defendants did not possess the necessary skill to prescribe and administer medication, treat, care for, observe, monitor, oversee and protect Mr. Gant.

75. Defendants neglected to apply the skills they did have and did not use reasonable care in applying the skills they did have specifically in the areas of correctional officer care and medical personnel care.

76. That by reason of the foregoing and as a result of the negligence of the Defendant, its agents, servants and/or employees , its agents, servants and/or employees, Plaintiff **KEITH GANT** has been rendered sick, sore, lame, maimed and disabled, and so remains due to the negligence of defendant.

77. Defendant **UNITED STATES OF AMERICA** was negligent in hiring, training retention and supervising correctional officers, supervisors, medical, emergency medical, administrative, nursing, and related healthcare personnel who were careless, unskillful, negligent, and who did not possess the requisite knowledge and skill of correctional, supervisory, medical, emergency medical, administrative, nursing, and healthcare professionals in the community.

78. Defendant **UNITED STATES OF AMERICA** was negligent, careless and reckless in their extension and renewal of privileges to and/or in their hiring, supervising, and retention of its employees, agents and personnel who did not possess the requisite knowledge and skill of said correctional officers, practitioners and specialists in the community and whom defendants knew or reasonably should have known did not possess said requisite knowledge and skill.

79. As a direct, legal and proximate result of the foregoing negligent hiring, training, retention and supervision, Plaintiff suffered injuries and damages including but not limited to two serious fractures, two invasive surgeries, permanent hardware, the need for extensive medical treatment including physical therapy and nerve testing, excruciating pain and suffering, mental distress, fear, anxiety, and discomfort, frustration and loss of quality of life, loss of enjoyment and pleasures of life, loss of income, as well as attendant losses, including, but not limited to, past and future medical expenses.

80. Plaintiff sustained serious and severe bodily injuries, including but not limited to injuries requiring surgery, extensive medical treatment, and significant physical rehabilitation.

81. As a direct and proximate result of the physical injuries sustained by Mr. Gant, he has been incapacitated from pursuing his usual activities, may be left with disabilities that will, in the future, similarly incapacitate him and cause him pain, suffering and future medical treatment.

## DEPRIVATION OF RIGHTS UNDER
## THE UNITED STATES CONSITUTION (EIGHTH and FIFTH AMENDMENTS)
## 42 U.S.C. § 1983 – BIVENS CLAIM

82. Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

83. Defendants' conduct deprived Plaintiff of his rights protected under the Eighth Amendment to the United States Constitution, in that they failed to provide Plaintiff with a bottom bunk, proper medication and adequate medical care although they knew or should have known that doing so posed an excessive risk to his health.

84. Defendants' deliberate indifference to Plaintiff's serious medical needs constitutes cruel and unusual punishment, and the unnecessary and wanton infliction of pain that the Eighth Amendment prohibits under Estelle v. Gamble, 429 U.S. 97 (1976) and its progeny.

85. Defendants' conduct deprived Plaintiff of his substantive due process rights protected under the Fifth Amendment to the United States Constitution, in that they failed to provide Plaintiff with adequate medical care although they knew or should have known that doing so posed an excessive risk to his health.

86. Defendants have deprived Plaintiff of such rights under color of law and are liable to Plaintiff pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971) and its progeny.

87. Beginning on or about November 11, 2020, Defendants knew or should have known that Mr. Gant was afflicted with a serious injury requiring prompt evaluation and treatment to avoid serious health consequences, including the need for invasive surgery and potential permanent damage. However, defendants did not ensure proper treatment and/or referrals, including to specialists such as surgeons, orthopedics, radiology and physical therapists, so that the required work-up and treatment could be provided.

88. The loss of consciousness and fall sustained by Mr. Gant was so alarming that it warranted an obvious need for immediate and proper treatment, yet Mr. Gant was not referred for proper

treatment for months and after the surgery, the need continued and again, Mr. Gant was not referred for proper after-care.

89. Mr. Gant's condition was objectively serious in that it was a condition that was observable and eventually with confirmed correlated testing, caused Mr. Gant extreme pain and significant loss of quality of life permanently.

90. Defendants were deliberately indifferent to Mr. Gant's serious medical needs, in that they failed to take reasonable measures to provide Mr. Gant with assigning a bottom bunk, properly prescribe and administer his medication, provide proper medical treatment, or access to proper medical treatment, for several months, even though they knew that they had an opportunity to intervene and prevent the exacerbation of Plaintiff's injuries and damages. Instead, Mr. Gant was cruelly allowed to continue experiencing pain, numbness, immobility and swelling while his untreated and serious injuries advanced.

91. Indeed, even when Mr. Gant complained of new on-set pain, numbness and swelling following the surgery, no referrals or imaging was ordered or performed or it was significantly delayed.

92. Defendants **WARDEN, BIALOR, CO DOES** and **MEDICAL DOES** failed to take steps to schedule, arrange, transport or allow necessary medical visits to occur.

93. Despite their knowledge that Mr. Gant was facing a substantial risk of debilitating permanent injury, Defendants had Mr. Gant wait for an excessively long period of time before receiving proper medical treatment.

94. Defendants **WARDEN** and **BIALOR** failed to ensure that BOP employees in MDC who interacted with Mr. Gant knew that he had a medical need, which required close and timely medical attention, monitoring and follow-up.

95. Defendants **WARDEN, BIALOR, CO DOES** and **MEDICAL DOES** knew that Mr. Gant he had a medical need and required close and timely medical attention, monitoring, and follow up, including referrals for medical attention, but failed to allow for the necessary medical

referrals to occur despite multiple requests for medical referrals by Mr. Gant.

96. Defendants were deliberately indifferent to Mr. Gant's serious medical needs, and as a result of their action or lack thereof, Plaintiff's rights under the Eighth Amendment were violated, causing Plaintiff permanent injury and unnecessary, prolonged pain.

97. Such actions of the defendants caused to subject the Plaintiff in the custody or under the physical control of the United States Government to cruel, inhuman, or degrading treatment or punishment prohibited by the Eighth Amendment to the Constitution of the United States and constitute a blatant violation of Plaintiff's civil rights secured by laws of the United States.

98. The acts and omissions of Defendants described more fully above were outside of the scope of "medical or related functions" as defined in 42 U.S.C. § 233(a). The acts and omissions of Defendants described more fully above, in failing to provide treatment for, or access to treatment for, Plaintiff's serious medical condition were so far below acceptable standards of care, that Defendants could not have been making truly medical judgments.

99. Defendants failed to provide Plaintiff with adequate medical care although they knew or should have known that doing so posed an excessive risk to his health, and as a result of their action or lack thereof, Plaintiff's substantive due process rights protected under the Fifth Amendment to the United States Constitution were violated

100. Defendant, its agents, servants and/or employees exposed Plaintiff to imminent and substantial risks of harm by withholding and delaying medical treatment.

101. Defendant, its agents, servants and/or employees demonstrated deliberate indifference to the injury inflicted upon plaintiff.

102. Upon information and belief, Plaintiff suffered from the conditions of confinement in that he was deprived of proper, adequate and/or reasonable accommodation pursuant to the Federal American with Disabilities Act when he was denied the bottom bunk assignment.

103. Upon information and belief, Plaintiff suffered from the conditions of confinement in that he was deprived of proper, adequate, and/or reasonable medical care.

104. Upon information and belief, Defendant, its agents, servants and/or employees deprived Plaintiff of his right to receive medical treatment.

105. Defendant, its agents, servants and/or employees deprived Plaintiff of his basic needs, which included medical care and reasonable safety.

106. That the deprivation of medical treatment and delay in medical treatment resulted in Plaintiff's suffering.

107. As a direct, legal and proximate result of the foregoing, including the aforesaid willful, deliberately indifferent, reckless and negligent acts and omissions and medical malpractice of the defendants, Plaintiff suffered injuries and damages including but not limited to two serious fractures, two invasive surgeries, permanent hardware, the need for extensive medical treatment including physical therapy and nerve testing, excruciating pain and suffering, mental distress, fear, anxiety, and discomfort, frustration and loss of quality of life, loss of enjoyment and pleasures of life, loss of income, as well as attendant losses, including, but not limited to, past and future medical expenses.

108. This action falls within one or more of the exceptions set forth in CPLR 1602, and as such, the defendants are jointly and severally liable pursuant to the exceptions set forth in Article 16 of the CPLR.

109. Pursuant to CPLR Section 1602(2) (iv), defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to his non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that defendants owed Plaintiff a nondelegable duty of care.

110. Pursuant to CPLR Section 1602(7), defendants are jointly and severally liable for all of Plaintiff's damages, including but not limited to his non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that said defendants acted with reckless disregard for the safety of others including Plaintiff.

**DEMAND FOR A JURY TRIAL**

111. Plaintiff hereby demands a trial by jury as to all issues so triable as a matter of right, pursuant to F.R.C.P. 38(b)(1) and 38(c).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Honorable Court enter judgment against the Defendants and requests:

1. An award of general and special damages in an amount to be determined at trial, plus prejudgment interest as permitted by law, for any and all monetary and/or nonmonetary losses suffered by Plaintiff;

2. An award of punitive damages as to the Bivens claims in an amount to be determined at trial;

3. All other relief sought by Plaintiff under this Complaint;

4. An award of costs that Plaintiff have incurred in his action, including, but not limited to, reasonable attorneys' fees and costs to the fullest extent permitted by law; and

5. Such other and further relief as the Court deems just and proper.

Dated: New York, New York
November 8, 2023

Yours, etc.

_____
Ellie A. Silverman, Esq.
Ellie Silverman Law P.C.
*Attorneys for Plaintiff*
**KEITH GANT**
745 5th Avenue, Suite 500
New York, NY 10151

*Special Counsel to:*
**SHULMAN & HILL, PC**
One State Street Plaza, 15th Floor
New York, New York 10004